NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MIAMI COCA COLA BOTTLING CO., doing business as Key West Coca Cola Bottling Company, Respondent.

No. 21369.

United States Court of Appeals Fifth Circuit.

Feb. 24, 1965.

Elliott Moore, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Arnold Ordman, Gen. Counsel, N. L. R. B., Washington, D. C., for petitioner.

Daniel R. Coffman, Jr., Hamilton, Bowden & Coffman, Jacksonville, Fla., for respondent.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and DYER, District Judge.

TUTTLE, Chief Judge:

This is a petition to enforce an order of the National Labor Relations Board, which found that respondent violated Sec. 8(a) (1) of the National Labor Relations Act by interrogating employees concerning their union adherence, by threatening retaliation against union supporters, and by discharging a supervisor for failing to discharge union adherents, and that respondent had discharged six employees in violation of Sec. 8(a) (3) of the Act.

The principal contest presented by this petition for enforcement revolves around the relatively unusual finding that the company's local manager had been fired because of his refusal to discriminate against union adherents and the board's order that this branch manager be reinstated by the company. It is to be borne in mind that the order of reinstatement of the manager, Dobarganes, is based upon the board's finding that the company's action in firing him violated the terms of the Act because of the protection afforded to the employees and not because of any right of protection afforded to Dobarganes himself, since he was a supervisor and not a protected employee.

On July 26, 1961, Dobarganes had been promoted to the position of plant manager at Key West, Florida, of the respondent company, which had its headquarters at Miami, more than 100 miles distant. During August, the union secretly began its organization efforts at Key West. By the end of the month it had sufficient signatures to justify the filing of a petition for election. There were at that time 23 Key West employees. Dobarganes received notice of the petition on September 1. He immediately called Mr. Lawton, a Vice-President of the company in Miami to inform him of the development. Although instructed by Lawton not to do anything pending further instructions and later instructions from Lawton or Mrs. Buckner, the owner and president of the company, to do nothing until he "got orders from the lawyer", and again later instructions

from Mr. Bowden, the lawyer, to do nothing, Dobarganes testified at the board hearing that he began interrogating employees about their union affiliation; that he threatened them that they would "suffer" by joining the union; and that the company might turn the plant into a warehouse if the union prevailed.

On September 11, at a meeting in Key West between Dobarganes, Mrs. Buckner, Mr. Powell, the company's personnel director from Miami, Mr. Bowden, and Lawton, Bowden told Dobarganes that "you have broken every rule in the book". Thus at this point, it is clear that the company had violated Sec. 8(a) (1) as charged by the board in connection with coercing employees in connection with their organization efforts. It is also plain that up to this date Dobarganes had been an aggressive anti-union actor contrary to the specific instructions of his superiors.

On the occasion of the meeting Dobarganes assured those present that the company would win the election "by 100 percent". The company, therefore, agreed to an election to be held on September 22. The union won the election 17 to 6. Thereafter Dobarganes attended a meeting of the officers in Miami at his request, at which time he offered to resign because the union had won the election. It is undisputed that Mrs. Buckner, the president of the company, said "Jerry, you don't have to resign on account of that. We have full confidence in you". The board then found on Dobarganes' testimony that Mrs. Buckner also said: "What you have to do is clean house as fast as you can", and that the manager told her that "I was going to do my best". This testimony by Dobarganes, the basis for the Board's finding that he was later fired for failing to "clean house" by getting rid of the union adherents fast enough, is strongly rebutted by the others present at the meeting.

The very strong, undisputed, case of incompetence as a manager proved against Dobarganes, including his forbidden 8(a) (1) violations discussed above, his efforts immediately after the election to discharge another employee whose job was saved by the company's lawyer; his running dispute with Menendes, the Key West sales manager; and the fact that his plant was the only one of the company's seven plants with declining sales; requires that we consider most carefully respondent's contention that the finding that he was fired because he failed to "use the ax" is not supported by substantial evidence on the record as a whole. This contention is further supported by reason of the fact that shortly after the election, as already mentioned, Dobarganes tried to fire a union adherent but was thwarted in his attempt by the company lawyer. It is also significant that on one occasion he told an employee that he had fired George Torres because he was head of the union.

Thus it is that the board's order requires the reinstatement of the only official of the respondent unmistakably shown to have engaged in anti-union conduct, the ground for reinstatement being, in effect, that he had been discharged by the company because he did not violate the company's instructions against anti-union action fast enough. Other than the unsupported testimony of this man, who was not only found, by his own admissions, to have violated the Act repeatedly, but whose testimony was inconsistent in some details, there was no evidence and there were no circumstances to justify a finding by the board that Dobarganes had not been fired because of incompetence.

While we recognize that the board may order the reinstatement of a supervisor who was fired for refusing to discriminate against union adherents, NLRB v. Talladega Cotton Factory, Inc., 213 F.2d 209, 40 A.L.R.2d 404 (5th Cir.), we conclude that there was not substantial evidence on the record as a whole to support the finding that this was the reason for firing Dobarganes.

We do not need to reach the respondent's next contention that, even though the board's finding was supported, this would not amount to a violation of Sec. 8(a) (1) because the company's reason

for firing Dobarganes was not communicated to the employees. See General Engineering, Inc. v. NLRB, 9 Cir., 311 F.2d 570. This contention would involve the legal question, i. e., whether such reason must be communicated to the employees, and, if so, whether it was in fact communicated in this case. Since we find that the board's determination of the cause of Dobarganes firing cannot be sustained, we pretermit answering the further question.

■ Without discussing the factual basis touching on the discharge of the five employees other than Armando Mesa, we have carefully considered the board's findings with respect to each of them and find that they are adequately supported on the record.

■ We come finally to the discharge of Armando Mesa, which the board found to have been caused by the illegal intent of the company to discriminate against him on account of his union activities. The reason assigned by the respondent for Mesa's discharge was a report from the proper official of the Boca Chica Naval Air Station that the pre-mix Coca-Cola machines on the base had been reported by the Sanitation Inspector of the base to be approaching an unsanitary condition and the statement that if they were not cleaned up they would have to be disconnected.

Although the examiner expressly discredited the testimony of Mr. Davis, the respondent's witness who fired Mesa, the fact that the officials at the base had reported that the Sanitary Inspector had reported the machines as unsatisfactory was fully corroborated by Chief Weldon Mobley of the Navy Base. He testified that he had reported this to Sales Manager Menendes, and that he had been assured that the machines would be put in proper condition. The examiner dismissed this testimony as "hearsay". Of course, it is not "hearsay" on the issue whether the Coca Cola Bottling Company was instructed that its machines were in an unsanitary condition and must be cleaned up. It is unimportant whether the requirements of the Sanitary Officer were too strict or not, since the officer having control of admission of the machines to the base was in a position to enforce the requirements. Moreover, Mesa himself testified that he had been told by Menendes of the report by Chief Mobley, thus fully corroborating Davis' testimony on this point. We conclude that there was not sufficient evidence on the record as a whole to sustain the finding of the board that Armando Mesa was discharged because of his union activities.

It follows, therefore, that the board's order requiring reinstatement of Dobarganes and Armando Mesa should not be enforced. In all other respects, it is enforced.