**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HONOLULU STAR–BULLETIN, INC.; and Advertiser Publishing Co., Ltd., d/b/a Hawaii Newspaper Operators, Respondents.**

No. 20894.

United States Court of Appeals Ninth Circuit.

Jan. 27, 1967.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, George H. Cohen, Attys., N. L. R. B., Washington, D. C., Dennis R. MacCarthy, Resident Atty., N. L. R. B., Honolulu, Hawaii, Roy O. Hoffman, Director, N. L. R. B., San Francisco, Cal., for appellant.

Laurence H. Silberman, Honolulu, Hawaii, Richard A. Williams, of Moore, Silberman & Schulze, Honolulu, Hawaii, on the brief, for appellees.

Before BARNES and HAMLEY, Circuit Judges, and BYRNE, District Judge.

BARNES, Circuit Judge:

The National Labor Relations Board (hereinafter "Board") has petitioned this court for enforcement of its order pursuant to Section 10(e) of the National Labor Relations Act (hereinafter "Act"), 29 U.S.C. § 160(e).

Respondents Honolulu Star-Bulletin and Advertiser Publishing Company publish two newspapers in Honolulu, Hawaii. Prior to June 1, 1962, each operated separately, and each had separate negotiations with the same employees' representative, Hawaii Newspaper Guild, Local 117, AFL–CIO (hereinafter "Union").

During the period of independent operation prior to consolidation, each newspaper maintained various incentive programs for advertising salesmen. Their respective contracts with the Union made

no provision for these incentive or bonus plans, and apparently they were not negotiated.

On June 1, 1962, the two newspapers consolidated their operations under the name of Hawaii Newspaper Operators (hereinafter "Company"). On July 13, 1962, an interim agreement was signed to cover any controversies prior to negotiations for a new contract for the combined operation. This agreement made no mention of the bonus plans, and there was no discussion of them during the negotiation sessions.

Immediately after the June 1 consolidation, the plans in force on each newspaper had been discontinued. However, notices were posted indicating that the Company would be in the future reinstitute bonus plans. On September 19, 1962, a new bonus plan (a Saturday-Monday plan affecting only one or two employees) was promulgated. The Union complained about the amounts involved and lack of retroactivity. Apparently this plan was dropped, and in February of 1963 another plan (called the team plan) was promulgated, with the assertion that the Company had the right to terminate it at any time. Negotiations for a contract failed and the Union struck on June 22, 1963. The strike ended in settlement on August 2, 1963. On August 5, 1963, the Company ended the bonus plan it had promulgated the previous February. A Christmas bonus plan was later instituted.

On October 31, 1963, a collective bargaining agreement was executed by the Union and the Company, to expire May 31, 1966. Exhibit A of that agreement, a schedule of minimum salaries, provided: "Nothing in this agreement shall limit the right of the employer at its discretion to pay amounts in excess of the salary set forth above." The Company in another part agreed not to decrease salaries.

On January 2, 1964, Union officials approached the Company about reinstitution of a bonus plan, but the Company, through Mr. Brandt, a management representative, expressed its view that un-der its contract it was not obligated to bargain on the subject. Specific demands to bargain on the question of bonus plans were rejected.

On March 31, 1964, the Union filed charges with the Board claiming that the Company had failed to bargain in good faith as required by Section 8(a) (5) of the Act. The Trial Examiner found that the Company violated Section 8(a) (5) and thereby 8(a) (1). He recommended an order requiring the Company to cease and desist from continued violations and that it bargain with the Union with respect to the reinstitution of bonus plans. The Board adopted the Trial Examiner's recommendation and has petitioned us to enforce its order.

One of the positions taken by the Company is that under our decision in NLRB v. C & C Plywood Corp., 351 F.2d 224 (9th Cir. 1965), the Board had no jurisdiction of the unfair labor practice complaint. In light of the Supreme Court's grant of certiorari, 384 U.S. 903, 86 S. Ct. 1337, 16 L.Ed.2d 357 (1966), we withheld submission of the present case until the Court had decided *C & C Plywood*. We must now resolve the present dispute in light of the Supreme Court's holding. (NLRB v. C & C Plywood, No. 53, 385 U.S. ——, 87 S.Ct. 559, 17 L.Ed. 2d ——, decided January 9, 1967.)

*C & C Plywood* involved a situation where the employer unilaterally changed the wages of certain of its employees while a collective bargaining agreement was in force. The employer felt that its conduct was justified under the terms of the agreement. The Supreme Court's decision reversed our previous holding as to jurisdiction. We had held that where the contract "arguably" permits certain conduct by the employer, the question is one of contract interpretation for the courts and beyond the jurisdiction of the Board. As the Supreme Court summarized:

"The argument is, rather, that since the contract contained a provision which *might* have allowed the respondent to institute the wage plan in question, the Board was powerless to de-

termine whether that provision *did* authorize the respondent's action, because the question was one for a state or federal court under § 301 of the Act." 385 U.S. ——, at p. ——, 87 S.Ct. 559, at p. 562 (emphasis by the Court, note omitted).

After discussing the practical difficulties, were the Board, in performing its functions, to follow our decision, the Court concluded:

"The legislative history of the Labor Act, the precedent interpreting it, and the interest of its efficient administration thus all lead to the conclusion that the Board had jurisdiction to deal with the unfair labor practice charge in this case. We hold that the Court of Appeals was in error in deciding to the contrary." 385 U.S. ——, at p. ——, 87 S.Ct. 559, at p. 565.

■ The Supreme Court's decision in *C & C Plywood* unquestionably determines the issue of the Board's jurisdiction in this case. But the jurisdiction question is not determinative of the case. In *C & C Plywood* the Supreme Court said, at p. ——, 87 S.Ct. at p. 565:

"The remaining question, not reached by the Court of Appeals, is whether the Board was wrong in concluding that the contested provision in the collective agreement gave the respondent no unilateral right to institute its premium pay plan."

Similarly, in this case the question remains whether the Board was "wrong" in its interpretation of the collective bargaining agreement here involved. We hold that it was.

In *C & C Plywood* the Supreme Court said that the disputed contract provision, in dealing with increases for "particular employee[s]", did not authorize a unilateral increase for a group of employees which would invalidate previously negotiated wage differentials. The Supreme Court's decision in *C & C Plywood*, like the Board's decision in that case, was a determination on the merits as to the question of whether the right to bargain had been waived in the contract.

Cf. NLRB v. Acme Industrial Co., 385 U.S. ——, 87 S.Ct. 565, 17 L.Ed.2d ——, decided January 9, 1967.

■ In the present case the contract language is much broader than that of *C & C Plywood*. In our case: "Nothing in this agreement shall limit the right of the employer at its discretion to pay amounts in excess of the salary set forth above." The bonus plans in question here are clearly within this language. Since the Company was given discretion as to that particular matter, that matter was "removed from the scope of collective bargaining during the term of the contract." LeRoy Machine Co., 147 N.L. R.B. 1431 (1964). See General Motors Corp., 149 N.L.R.B. 396 (1964), Kennecott Copper Corp., 148 N.L.R.B. 1653 (1964).

We conclude that the quoted part of the collective bargaining agreement gave the Company discretion as to the institution of bonus incentive plans, and that the Company did not violate Section 8(a) (5) or Section 8(a) (1) of the Act by failing to bargain in regard to such plans. Cf. Ador Corp., 150 N.L.R.B. 1658 (1965).

Enforcement denied.