**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MIAMI COCA–COLA BOTTING CO., and Miami Coca-Cola Bottling Co., d/b/a Key West Coca-Cola Bottling Co., Respondents.**

No. 23577.

United States Court of Appeals
Fifth Circuit.

Sept. 26, 1967.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., William Wachter, Atty., N.L.R.B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Atty., N.L.R.B., Washington, D. C., for petitioner.

David A. Bartholf, Hamilton & Bowden, Jacksonville, Fla., for respondents.

Before WASHINGTON,* TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge.

This case is before the Court on the petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended, Title 29, U.S.C., Sec. 151 et seq., for enforcement of its order against respondent.[1]

The Board found that Miami Coca-Cola Bottling Co. (Miami) and Key West Coca-Cola Bottling Co. (Key West), both Miami and Key West hereinafter collectively referred to as the Company, refused to meet at reasonable times and otherwise failed to negotiate in good faith with the certified bargaining representative of their employees,[2] in violation of Section 8(a) (5) and (1) of the Act, Title 29, U.S.C. Sec. 158(a) (5) and (1). The Board found, in addition, that Miami violated Section 8(a) (5) and (1) of the Act by polling its employees about their union sentiments and by withdrawing recognition from the Union on January 28, 1963, on the ground that the poll showed the Union was no longer the majority representative of the employees, and that Key West similarly violated Section 8(a) (5) and (1) of the Act by with-

drawing recognition from the Union on January 9, 1963. Key West is a branch of Miami Coca-Cola Bottling Company. Following election at each plant, the Board certified the Union as the bargaining representative of the Key West and Miami employees on October 2 and November 14, 1961, respectively. Prior to the certification, both Key West and Miami engaged in conduct resulting in the ultimate enforcement of unfair labor practice charges against them.[3]

After the certification in 1961, separate bargaining sessions were conducted until January 1963, when both Miami and Key West withdrew Union recognition. Throughout the bargaining sessions the Union attempted to persuade the two companies to consolidate their bargaining efforts but all attempts to do so were bitterly opposed by the Company.

Three issues are now before the Court: (1) whether substantial evidence on the record as a whole supports the Board's finding that respondent failed to bargain with the Union in good faith, in violation of Section 8(a) (5) and (1) of the Act; (2) whether the Company (both Miami and Key West) violated Section 8(a) (5) and (1) of the Act by withdrawing recognition from the Union in January and February 1963, and (3) whether the Board's order is over-broad in its prohibition of future polls.

In resolving the first two issues, the Trial Examiner found, contrary to the Board, that the Company's efforts did represent good faith bargaining, but agreed with the Board that Section 8(a) (5) and (1) were violated by withdrawing recognition of the Union.

I.

The Company's brief on this appeal bitterly attacks the Board's variance from the Trial Examiner's finding as to

---

* Of the District of Columbia Circuit, sitting by designation.

1. The Board's decision and order are reported at 150 N.L.R.B. 892.

2. General Sales Drivers and Allied Employees Union, Local No. 198, International Brotherhood of Teamsters, Chauf-

feurs, Warehousemen and Helpers of America.

3. Key West Coca-Cola Bottling Co., 140 N.L.R.B. 1359, enforced as modified, 341 F.2d 524 (5th Cir. 1965); Miami Coca-Cola Bottling Co., 138 N.L.R.B. 1209, enforced 324 F.2d 501 (5th Cir. 1963).

(1) above. Briefly stated, the Company asserts that the entire question of good or bad faith bargaining necessarily involves credibility determinations that are best made by the Trial Examiner before whom the witnesses appear, and that such credibility determinations are not to be disregarded by the Board absent special circumstances. N.L.R.B. v. James Thompson and Co., Inc., 208 F.2d 743 (2nd Cir. 1953); N.L.R.B. v. Kaiser Aluminum and Chemical Corporation, 217 F.2d 366 (9th Cir. 1954); N.L.R.B. v. Dal-Tex Optical Co., Inc., 325 F.2d 78 (5th Cir. 1963).

We are not unmindful of the teachings of these cases and others cited by the Company. Nor do we disregard the analysis of this same issue found in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). An extended discussion is given in *Universal Camera* as to the review to be accorded by the Court of Appeals when the Board and Trial Examiner disagree. The following quotation is helpful in this regard:

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The *substantial evidence* standard is not modified in any way when the Board and its examiner disagree. We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witness and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial'." (Emphasis added)

340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456, 472 (1951).

Having thoroughly examined the record in light of this standard, and having thoroughly considered those portions of the Board's findings attacked by the Company as "false", "half truths", and similar invectives, we conclude that there is substantial evidence on the record as a whole to support the finding of the Board that the Company did not bargain in good faith.

While the findings of the Board are not as complete as those of the Trial Examiner, and in some instances do not recite events which reflect favorably toward the Company's bargaining efforts, we do not find support in the record for the contention of the Company that there was a disregard of credibility determinations made by the Trial Examiner.

II.

Proceeding to the second issue, we must decide whether the record supports by substantial evidence the Board's determination that Company withdrawal of Union recognition in January and February of 1963, was an unfair labor practice in violation of Section 8(a) (5) and (1). Both the Trial Examiner and the Board were in agreement that there had been such a violation. We find that this determination is supported by substantial evidence in the record.

At the Miami plant a poll was taken by the Company in January 1963, to determine whether the employees wished to continue to be represented by the Union. The result was a vote of 126 to 32 *against* further Union representation. Similarly, at Key West, although no formal poll was taken, a petition was signed by a majority of the employees indicating that they no longer wanted to be represented by the Union. The Company's withdrawal of recognition followed.

It is well settled that the employer may not withdraw recognition during the year following a Union's certification. Brooks v. N.L.R.B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125 (1954).

However, this one year period will be extended if there has been an absence of good faith bargaining on the part of the employer during the certification year. N.L.R.B. v. Commerce Co., 328 F.2d 600 (5th Cir. 1964), cert. denied 379 U.S. 817, 85 S.Ct. 32, 13 L.Ed.2d 28; Lankenau v. Coggeshall and Hicks, 350 F.2d 61 (2nd Cir. 1965). Such being the case here, the Board's finding in this respect is correct. The Company's contention as to a good faith doubt of the Union's majority status necessarily must fall if there was no good faith bargaining during the certification year. N.L.R.B. v. Commerce Company, supra.

### III.

The final contention of the Company is with regard to the Board's order with respect to the taking of future polls. The Trial Examiner recommended that Miami be ordered to cease and desist from:

"(b) Conducting a poll or polls of its employees concerning their sentiments as to union affiliation until such time as the Union, above named, has been decertified by the Board or until the unfair labor practices found by the Board to have been committed by Respondent Miami Coca-Cola in Case No. 12 CA-2028(1-3) have been remedied and the Board's order in that case and in the instant case have been either complied with or dissolved by order of a United States Court of Appeals."[4]

■■ The final order of the Board required that a period be placed after the word "affiliation", and that the rest of the paragraph be stricken. In effect, this prohibits a taking of polls concerning employees' union sentiments *ad infinitum*. The taking of the poll was not a *per se* violation of the Act, but only so far as it was relied on in withdrawing recognition of the Union or was an attempt to coerce the employees. N.L.R.B. v. Crystal Laundry and Dry Cleaning Company, 308 F.2d 626 (6th Cir. 1962). There has been no allegation that the poll was coercively conducted. Further, the recommended order of the Trial Examiner with respect to the taking of future polls has been complied with by the enforcement of the earlier unfair labor practices against Miami,[5] thereby rendering it outdated. On the other hand, the Board's order is overbroad in that it prohibits the taking of polls *ad infinitum*.

The prohibition against further polls should run during the pendency of further bargaining and enforcement proceedings required by our decision. Accordingly, the Board is directed pursuant to Rule 38(5) [6] of this Court to submit a proposed decree in accordance with this opinion, including specifically a provision pertaining to the taking of future polls, modified to conform to the views here expressed. The respondent's objections, if any, to the proposed decree may, of course, likewise be presented pursuant to Rule 38(5).

Enforced as modified.

---

4. Enforced 324 F.2d 501. See footnote [3] this opinion. The reference to No. 12-CA-2028(1-3) is an apparent typographical error, originating in the Trial Examiner's Recommended Order and carried unchanged into the record before us. This we learn from post-argument inquiry directed to Board counsel. In the Order as modified the reference should be corrected to read "12-CA-2058 (1-2)".

5. See footnote [3].

6. When an opinion of this Court is filed directing the entry of a decree enforcing in whole or in part the order of an administrative agency, board, commission, or officer and the Court has not entered the decree, the agency, board, commission, or officer concerned shall within ten days serve upon the respondent and file with the Clerk a proposed decree in conformity with the opinion. If the respondent objects to the proposed decree as not in conformity with the opinion, he shall within five days thereafter serve upon the agency, board, commission, or officer concerned and file with the Clerk a proposed decree which he deems to be in conformity with the opinion. The Court will thereupon settle and enter the decree without further hearing or argument.