**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**C & C PLYWOOD CORPORATION and Veneers, Inc., Respondents.**

**No. 22305.**

United States Court of Appeals
Ninth Circuit.

June 6, 1969.

---

Hans J. Lehmann (argued), Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Atty., NLRB, Washington, D. C., Thomas P. Graham, Director, NLRB, Seattle, Washington for petitioner.

George J. Tichy (argued), Spokane, Wash., for respondent.

Before BROWNING and DUNIWAY, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge.

Petitioner seeks to enforce its order of August 13, 1967, finding that respondents, C & C Plywood Corporation and Veneers, Inc.,[1] violated Section 8(a) (5) and (1) of the National Labor Relations Act by refusing to recognize and bargain collectively with Plywood, Lumber and Sawmill Workers Local Union No. 2405, AFL–CIO, and requiring the companies, upon request, to bargain

---

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

1. C & C Plywood Corporation is engaged in the manufacture of plywood panels at Kalispell, Montana. Veneers, Incorporated, is engaged in the production of green veneer in an adjoining plant, approximately 95 per cent of which is sold to C & C Plywood. The companies have common officers, share common top management and the use of offices and shop facilities.

collectively with the union. This court has jurisdiction by virtue of Section 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e).

Following a representation election on July 6, 1962, the union on August 28, 1962, was certified as the bargaining agent of both employers. The companies[2] and union executed a collective bargaining agreement on May 1, 1963, effective to October 31, 1963, and from year to year thereafter unless either party notified the other of a desire to change or terminate the agreement.

The contract contained a wage clause, providing in part:

"A. A classified wage scale has been agreed upon by the Employer and the Union, and has been signed by the parties and hereby made a part of the written Agreement. The Employer reserves the right to pay a premium rate over and above the contractual classified wage rate to reward any particular employee for some special fitness, skill, aptitude or the like
\* \* \*"

Relying upon this clause, C & C Plywood on May 20, 1963, without prior notice to the union, posted a notice announcing that effective immediately and for the ensuing two months, all members of the glue spreader crews would receive premium pay, provided they met certain production standards. The union contended that this was not "premium pay within the meaning (of the wage clause quoted), but rather a change in wages made dependent upon a production basis rather than hourly rates agreed upon with the Union". The union was unsuccessful in its efforts to get the company to rescind the premium pay plan and on July 31, 1963, filed an unfair labor charge on the ground that the employer had refused to bargain in violation of Section 8(a) (5) and (1) by unilaterally establishing the premium pay plan.[3]

A trial examiner of the Board found that no unfair labor practice had been committed and recommended that the complaint be dismissed. On October 24, 1964 the Board reversed the trial examiner and found that C & C Plywood Corporation had unlawfully refused to bargain by the unilateral introduction of the premium pay plan for the glue spreader crews.

This court denied enforcement of the Board's order in N.L.R.B. v. C & C Plywood Corporation, 351 F.2d 224, decided September 10, 1965. The Supreme Court reversed, with directions to enforce the Board's order. N.L.R.B. v. C & C Plywood Corporation, (decided January 9, 1967) 385 U.S. 421, 87 S.Ct. 559, 17 L. Ed.2d 486, reh. denied (February 20, 1967) 386 U.S. 939, 87 S.Ct. 951, 17 L. Ed. 812. On August 31, 1967, a decree was entered in this court pursuant to the mandate of the Supreme Court.

On August 27, 1963, the companies gave the union notice of their desire to terminate the agreement as of October 31, 1963, and filed with the Board's regional director a petition for an election, claiming good faith doubt as to the majority status of the union. The union, on August 29, 1963, gave the employer a 60 day notice of its desire to make changes in the contract and offered to meet with the companies for bargaining purposes.

The regional director dismissed the representation petition on September 26, 1963, because of the pending unfair labor practice proceedings. The Board affirmed on December 3, 1963. On January 30, 1964, the employer filed another petition seeking a representation election. This was denied by the regional director on February 18, 1964, and on appeal the Board, on April 2, 1964, affirmed.

On August 26, 1964, the employer declined further recognition of the union

---

2. The preamble to the agreement defined "employer" as "C & C Plywood Corporation and Veneers, Inc., both of Kalispell, Montana".

3. Veneers, Inc., was not a party to that proceeding.

as the collective bargaining agent of its employees. On November 5, 1964, the union filed an unfair labor charge alleging that the employer's refusal to deal with the union constituted a violation of Section 8(a) (1) and (5) of the National Labor Relations Act. The companies admitted that they refused to recognize the union for any purpose after August 26, 1964, but contended that they had a good faith doubt as to the union's majority status, and that the union no longer represented a majority of the employees in April, 1964, and thereafter.

The trial examiner, in a decision dated September 7, 1965, concluded that (1) the evidence was insufficient to warrant a finding that the employer had reasonable ground for believing the union had lost its majority status since its certification; but (2) with respect to the premium pay unfair labor practice, there was no allegation or finding of bad faith on the part of C & C Plywood and the then pending unfair labor practice should not bar the employer from questioning the union's majority status. The decision of the Board, dated April 13, 1967, affirmed the decision of the examiner "for different reasons", holding that the "prior unfair labor practice was of such a character and effect as to preclude respondents from thereafter questioning the Union's majority status in good faith.[4]

█ It is well settled that for a period of one year from the date of certification, the employer, absent "unusual circumstances", must bargain in good faith and may not challenge the union's majority status. Brooks v. N.L.R.B., 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, 42 A.L.R.2d 1405; N.L.R.B. v. Holly-General Co., 9 Cir. 1962, 305 F.2d 670.

█ When there has been a refusal to bargain in good faith, it may be "reasonable and proper" to extend the certification year. N.L.R.B. v. Burnett Construction Co., 10 Cir. 1965, 350 F.2d 57, 60.[5] There must, however, be a "factual basis for the Board's application of the extension principle". N.L.R.B. v. Gebhardt-Vogel Tanning Co., 7 Cir. 1968, 389 F.2d 71, 75.

The Board found that regardless of the employer's good faith belief that its action was proper under the contract, the effect of the unilateral granting of a wage increase three weeks after the execution of the collective bargaining agreement was to "undermine the union's authority among the employees whose interest it was obligated to represent * * *" and that "there was a distinct probability that the employee disaffection with their bargaining representative relied upon by * * * (the companies) as ground for their refusal to bargain with the union was caused by the prior unfair labor practice." The Supreme Court in holding that the Board was correct in finding an unfair labor practice added that "* * * the real injury in this case is to the union's status as bargaining representative". 385 U.S. at 429, n. 15, 87 S.Ct., at 564.

█ The charge of an unfair labor practice having been sustained, the Board had "power to take appropriate steps to the end that the effect of those practices will be dissipated. That necessarily involves an exercise of discretion on the part of the Board—discretion involving an expert judgment as to ways and means of protecting the freedom of choice guaranteed to the employees by the Act. It is for the Board, not the courts, to determine how the ef-

---

4. The companies had filed exceptions to the trial examiner's decision, limited to the finding that there was not adequate evidence to support their good faith belief that the union had lost its majority status. Neither the union nor general counsel filed exceptions. The Board did not pass upon the issue raised by the companies, deeming this unnecessary in view of its holding on the second issue.

5. See also, N.L.R.B. v. Commerce Co., 5 Cir. 1964, 328 F.2d 600, 601, cert. denied 379 U.S. 817, 85 S.Ct. 32, 13 L.Ed.2d 28; N.L.R.B. v. Miami Coca Cola Bottling Co., 5 Cir. 1967, 382 F.2d 921, 924; MAR-JAC Poultry Co., Inc., 136 N.L. R.B. 785.

fect of prior unfair labor practices may be expunged." International Assoc. of Machinists v. N.L.R.B., 1940, 311 U.S. 72, 82, 61 S.Ct. 83, 85 L.Ed. 50, reh. denied 311 U.S. 729, 61 S.Ct. 314, 85 L.Ed. 474. Only when the Board's discretion has been abused is the court permitted to deny enforcement and order an alternative remedy. N.L.R.B. v. H & H Plastics Manufacturing Co., 6 Cir. 1968, 389 F.2d 678, 684.

■ In support of their contentions that under the facts here presented the Board either lacked power to apply the extension principle or abused its discretion in doing so, respondents argue that (1) there was an inexcusable delay in the Board's final action; (2) the extension principle should not be applied in a case where a collective bargaining agreement was in fact negotiated, and the employer dealt with the union except on the matter of premium pay for the glue spreaders; (3) there was no substantial evidence to show that the loss of a majority status was caused by or connected with the premium pay unfair labor practice; and (4) the unfair labor practice was "highly speculative, and of a minor nature".

It is true that the delay in the various proceedings and particularly in the final decision of the Board was substantial.[6] This in itself, however, does not afford a basis for denying enforcement of the order. "Inordinate delay in any case is regrettable, but Congress has introduced no time limitation into the Act except that in § 10(b)". N.L.R.B. v. Katz, 1962, 369 U.S. 736, 748, n. 16, 82 S.Ct. 1107, 8 L.Ed.2d 230.

■■ While in most cases involving the extension principle the parties had not agreed upon a contract, the duty to bargain collectively with the designated union does not cease with the execution of the collective bargaining agreement.[7] "* * * [T]he duty to bargain unquestionably extends beyond the period of contract negotiations and applies to labor-management relations during the term of an agreement." N.L.R.B. v. Acme Industrial Co., 1967, 385 U.S. 432, 436, 87 S.Ct. 565, 17 L.Ed.2d 495. The mere fact that a contract has been negotiated does not preclude the entry and enforcement of a bargaining order.

■ As noted supra, the Board found that the effect of the unfair labor practice was to undermine the union's authority among its members and that there was a distinct probability that any employee dissatisfaction with the union was caused by the unfair labor practice. Particularly in view of the decision of the Supreme Court in N.L.R.B. v. C & C Plywood Corp., supra, we conclude that there was substantial evidence to support the Board's findings,[8] and that the Board did not abuse its discretion in making the bargaining order.[9] Conse-

---

6. The present charge was filed November 5, 1964, the trial examiner's decision was dated September 7, 1965, and the Board's decision was dated April 13, 1967—more than 19 months following the trial examiner's decision. The action involving the unfair labor practice, however, was pending in court during most of that period, rehearing having been denied by the Supreme Court on February 20, 1967.

7. "Collective bargaining is a continuing process. Among other things, it involves day-to-day adjustments in the contract and other working rules, resolution of new problems not covered by existing agreements, and the protection of employee rights already secured by contract." Conley v. Gibson, 1957, 355 U.S. 41, 46, 78 S.Ct. 99, 2 L.Ed.2d 80. See also, Fibre-

board Paper Products Corp. v. N.L.R.B., 1964, 379 U.S. 203, 211, 85 S.Ct. 398, 13 L.Ed.2d 233, 6 A.L.R.3d 1130.

8. Our review is limited to a determination of whether the findings of the Board are supported by substantial evidence on the record as a whole. Universal Camera v. N.L.R.B., 1951, 340 U.S. 474, 487–488, 71 S.Ct. 456, 95 L.Ed. 456.

9. We do not hold that any charge of an unfair labor practice requires or permits the Board per se to extend the "certification year" and prevent the employer from questioning the union's representation. A union should not be permitted, through filing an unmeritorious charge and protracted litigation, to prevent a representation election to the detriment of the employees whose rights the Act is designed to

quently, even though the factors upon which respondents rely might lead the court to enter a different type of order, we may not substitute our judgment for that of the Board.

Enforcement of the Board's order is granted.

protect. We simply hold that the Board did not abuse its discretion in extending the certification year under the factual situation here presented.