499 F.2d 542
 86 L.R.R.M. (BNA) 2814, 162 U.S.App.D.C. 406,
74 Lab.Cas. P 10,117
 LOCAL UNION NO. 2338, INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
FEDERAL PACIFIC ELECTRIC COMPANY, Respondent, Local Union
No. 2338, International Brotherhood of Electrical
Workers, Intervenor.
FEDERAL PACIFIC ELECTRIC COMPANY, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 73-1553, 73-1708 and 73-1852.
 United States Court of Appeals, District of Columbia Circuit.
 Argued May 28, 1974.
Decided June 20, 1974.
 
 Laurence J. Cohen, Washington, D.C., for petitioners in No. 73-1553 and intervenors in No. 73-1708.
 William M. Saxton, Detroit, Mich., with whom Robert M. Vercruysse, Detroit, Mich., was on the brief for petitioner in No. 73-1852 and respondent in No. 73-1708.
 John D. Burgoyne, Atty., N.L.R.B., with whom John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., were on the brief, for petitioner in No. 73-1708 and respondent in Nos. 73-1553 and 73-1852.
 Before McGOWAN and ROBINSON, Circuit Judges, and STANLEY A. WEIGEL,* United States District Judge for the Northern District of California.
 PER CURIAM:
 
 
 1
 These consolidated direct review proceedings under the National Labor Relations Act, 29 U.S.C. 151 et seq., involve (1) a petition by the employer to overturn a Board order (No. 73-1852), (2) a request for enforcement of that order by the Board (No. 73-1708), and (3) a petition by the union seeking relief beyond that given to it by the Board (No. 73-1553). The order in issue found the employer guilty of unfair labor practices under Sections 8(a)(1) and 8(a)(5) of the Act. The conduct giving rise to the former consisted of antiunion solicitation and threates directed to employees. The 8(a)(5) violation was found to lie principally in dilatory tactics in scheduling bargaining sessions as the certification year approached its close, and an assertedly unilateral wage increase after that year had ended.
 
 
 2
 These controversies derived from an organizing campaign carried on in 1971 at the employer's plant in Albemarle, North Carolina.[1] A representation election was won by the union in a close vote and, on March 12, 1971, the union was certified by the Board as the bargaining representative of the production and maintenance employees. The events found by the Board to be unfair labor practices occurred after this date.
 
 
 3
 The Administrative Law Judge and the Board concurred in finding the 8(a)(1) violation, but the former concluded that the employer had not failed to meet its bargaining obligations under 8(a)(5). Because of this latter circumstance, we have examined the record with particular care. As might be expected, there is considerably less question about the adequacy of the evidence to support the 8(a)(1) finding than there is about the 8(a)(5). The latter, indeed, presents a fairly close case on the evidence of record, inasmuch as there is no question but that the bargaining started promptly after certification and continued intensively for several months. The violation has to be discerned in what is said to be the emergence of a purposeful pattern of delay and evasion on the part of the employer as the end of the certification year approached. The wage increase in issue occurred after the end of the certification year, but at a time when the union was still claiming to speak for a majority.
 
 
 4
 The problems in this case seem to have been compounded by the fact that, after the certification election, the company's business had undergone a substantial expansion and many new employees had come into the plant. We have, on balance and after searching scrutiny of the record, concluded that there is evidence of a substantial nature to support the Board's findings with respect to both 8(a) (1) and 8(a)(5); and, that being so, we are not at liberty to disturb the Board's order, even though the same record might have been compatible with a different result. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 5
 The union's petition goes only to the matter of remedy. The order entered by the Board affords the familiar remedies of the posting of notices; the reinstatement with back pay of employees who took part in a strike in March of 1972 against the unfair labor practices; and a direction that the employer shall, upon request, bargain collectively with the union over wages, hours, and other terms and conditions of employment.[2] Prior to the entry of that order the union had requested that, if the Board should conclude that the employer had failed in its obligation to bargain during the course of the certification year, the Board should provide for a six-months extension of that certification year in accordance with a remedial device originally fashioned by the Board in Mar-Jac Poultry Co., 136 N.L.R.B. 785. This remedy is designed to make up to the union any opportunity lost by it to reach agreement during the certification year by reason of dilatory tactics on the part of the employer. It is a remedial measure which has from time to time been employed by the Board in succeeding cases and recognized by the courts as an appropriate addition to the Board's arsenal of remedies.[3]
 
 
 6
 In its decision and order the Board, in denying this request, said only that 'As we assess the violation here found, we conclude that a general bargaining order is the appropriate remedy, rather than a specific extension of a certification year.' The union complains, and with reason in our view, that this is far too cryptic a conclusion to make judicial review of the Board's action meaningful. See NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 443, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965).
 
 
 7
 We recognize, of course, the large area of discretion customarily accorded to the Board in its formulation and employment of remedies, see, e.g., Fibreboard Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); and it may well be that the Board's assessment of appropriateness in this instance is solidly grounded in a rational exercise of the Board's discretion. What we do not know, becuase of the Board's terseness, is what the nature of that assessment was. Counsel for the Board, in brief and oral argument, point to circumstances characterized as rationally warranting the assessment made by the Board, but the reasons for Board action are to be supplied by the Board, and not by counsel as its surrogate.
 
 
 8
 We therefore remand No. 73-1553 to the Board in order to give it an opportunity to state the basis of its denial of the request for extension of the certification year. In all other respects, the Board's order is undisturbed and enforcement granted.
 
 
 9
 It is so ordered.
 
 
 
 *
 Sitting by designation pursuant to Title 28, U.S.Code 292(d)
 
 
 [1]
 A 1970 effort to organize the plant by the petitioner union eventuated in a finding of unfair labor practices on the part of the employer. 195 N.L.R.B. 609, 612, 616 (1972)
 
 
 [2]
 The Board's order does not in terms prescribe the period for which the employer must bargain with the union, but comparable provisions have been construed as contemplating that such obligation must continue for a 'reasonable period' of time. Brooks v. NLRB, 348 U.S. 96, 98, 75 S.Ct. 176, 99 L.Ed. 125 (1954)
 
 
 [3]
 Stan Long Pontiac, Inc., 175 N.L.R.B. No. 71, enf'd sub nom. NLRB v. Rummel Pontiac-Cadillac, Inc., 434 F.2d 1050 (6th Cir. 1970); NLRB v. C & C Plywood Corp., 413 F.2d 112 (9th Cir. 1969); NLRB v. Rish Equipment Co., 407 F.2d 1098 (4th Cir. 1969); NLRB v. Gebhardt-Vogel Tanning Co., 389 F.2d 71 (7th Cir. 1968); NLRB v. Burnett Construction Co., 350 F.2d 57 (10th Cir. 1965), enforcing 149 N.L.R.B. 1419; Lamar Hotel, 140 N.L.R.B. 226, enf'd sub nom. NLRB v. Commerce Co., 328 F.2d 600 (5th Cir.), cert. denied, 379 U.S. 817, 85 S.Ct. 32, 13 L.Ed.2d 28 (1964)