**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SHARON HATS, INCORPORATED, Respondent.**

**No. 18517.**

United States Court of Appeals
Fifth Circuit.

May 5, 1961.

Rehearing Denied June 6, 1961.

Solomon I. Hirsh, Atty., N.L.R.B., Dominick L. Manoli, Assoc. Gen. Counsel, N.L.R.B., Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., Washington, D. C., for petitioner.

Emil Corenbleth, Dallas, for respondent.

Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

TUTTLE, Chief Judge.

The National Labor Relations Board, following proceedings under Section 10 (c) of the National Labor Relations Act, found the respondent to be in violation of Sections 8(a) (5) and (1) of the Act for having refused to bargain collectively with the United Hatters, Cap and Millinery Workers International Union, AFL–CIO, that Union being the duly-authorized bargaining agent of respondent's employees, and found a further violation of the Act in that respondent unilaterally adopted an employee vacation plan without notifying or bargaining with the Union. The Board's order required respondent to cease and desist from refusing to bargain collectively, from unilaterally instituting changes with respect to wages, hours and working conditions of its employees, and from in any manner interfering with, restraining or coercing its employees in the exercise of their Section 7 rights; further, the respondent was directed to bargain with the Union upon request and to post appropriate notices. The Board now seeks enforcement of its order.

Respondent is a manufacturer located at Dallas, Texas, of millinery products which are sold in interstate commerce.

The Union was certified, following an election duly held and conducted, as the representative of respondent's employees on December 5, 1957, and on the following January 6 respondent was requested by the Union to meet and bargain collectively with it on matters concerning wages, hours and working conditions. On January 10 the respondent replied to the Union that it would not meet as requested, because of a claim that the Union had lost its majority. On January 14 the Union again asked respondent to meet with it, asserting that it was obligated to honor the certification of the Board, upon which respondent again refused to meet, justifying its position on the same grounds. In May of the same year, respondent announced and instituted a vacation plan for its employees though no bargaining had taken place and though the Union had not been notified or consulted in any manner.

In due course a complaint was issued against respondent for its refusal to bargain, and a hearing began before the trial examiner on February 4, 1959, on which date the examiner gave his approval to an agreement between respondent and the Union to postpone the hearing indefinitely so as to permit time for them to bargain. During that month and the two months following some six bargaining meetings were held during which the parties submitted contract proposals, discussed them and considered changes. Tentative agreement had by April 13, 1959, been reached on some of the provisions to be included in the contract, but the parties were apparently sharply divided on several items, viz., length of trial period for new employees, checkoff, a no-strike and no-lockout clause, vacations, a prohibition against sending work out or doing business with employees on strike, and duration of the contract, among other matters. The April 13 session came to an end with respondent offering to execute a contract without the sought-for economic benefits, which offer the Union refused, but each party agreed that it would in-

form the other if it decided to make any concessions.

On April 22, the vice-president of the Union wrote to the respondent:

"Please be advised that we are ready to meet with you again on negotiations for a Union contract. We have an offer to make to you regarding a question under discussion which will, we believe, indicate to you our desire to negotiate in good faith.

"We shall appreciate if you will meet with us on Monday, April 27th at 2:30 P.M. at our office.

"Please advise us if this time and place is agreeable to you."

The respondent answered this letter two days later:

"As you know, I have never had any experience in negotiating with the Union before, but I cannot understand your letter.

"For three months we have been negotiating with you for a contract. We have bargained in the utmost good faith, and we have agreed on many portions of such contract. On March 6, 1959, we sent you our proposed contract, and since that time in the various negotiations many of the Articles were agreed upon as written and to other Articles we both agreed to make amendments. After much bargaining four issues remained without agreement, namely, holidays, wage increases, Health and Welfare contributions, and National Millinery Promotion Fund contributions. At our last meeting on April 13, we advised you that we could not agree upon these items, and you advised us you could not agree. We told you we would have no change of heart about them, and you said you would have no change of heart about them.

"Now, if you have changed your position with reference to these four items and are willing to agree to eliminate them and execute the contract we proposed with the amendments that have been agreed upon, we will be glad to meet with you again. All that will be necessary then is to rewrite the contract to include the amendments we have agreed upon and for the Union and us to execute the same. To meet again, after the thorough bargaining and negotiations that have gone on between us, without an indication from you that your position is changed upon all of these items would, in our opinion, be a waste of time."

The Union next wrote the respondent on May 8:

"We have given considerable thought to your letter of April 24. I do not understand your reluctance to meet with us again. As I stated in my letter of April 22 the union has another offer to make. I thought that the offer could better be discussed at the bargaining table rather than through correspondence. I shall be specific, however. The union is offering to withdraw its request for contributions to the National Millinery Promotion Fund.

"As to the other items you name, towit; holidays, wage increases and health and welfare contributions, the union is not taking an adamant position. We wish to bargain about each of those items, and we trust that there will be further give and take between the parties.

"Please notify me by telephone so that we might discuss a suitable time and place for a meeting. Our office is available for a meeting, or we might meet at the factory."

Respondent replied to this letter on May 11:

"I have re-read my letter to you of April 24, and it appears to me to be very clear. Although you are withdrawing your request for contributions to the National Millinery Promotion Fund, this does not seem to be of any importance, since I

am advised you could not insist upon it any way. With reference to the other matters, our position has not changed, and there is no need to bargain further about these matters, unless you have changed your position to conform to ours. In such instances, as I told you in my letter of April 24, all that would be necessary would be to rewrite portions of the contract in accordance with amendments we have agreed upon and to execute the same."

No further negotiations took place between respondent and the Union following this exchange of letters, and the trial examiner reopened the hearing on July 16. The order and decision of the Board was based on those recommendations made by the examiner after the taking of additional testimony.

 We think that on the facts as above stated the Board could take no course other than that of finding the respondent in violation of Sections 8(a) (5) and (1) of the Act. Under Brooks v. N. L. R. B., 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125, the respondent was under an obligation to bargain with the duly certified representative of its employees during the period of at least one year after certification, and there is not in this case any of those "unusual circumstances" which would excuse the respondent from this obligation. Respondent had doubts following the certification that the Union still had a majority of its employees, but those doubts alone are not sufficient to excuse respondent from its obligation to bargain in good faith. This it initially refused to do, and that refusal, without more, constitutes a violation of the Act.

 In Armstrong Cork Co. v. N. L. R. B., 5 Cir., 211 F.2d 843, at 847, this Court said that "Good faith compliance with Sections 8(a) (5) and (1) of the Act presupposes that an employer will not alter existing 'conditions of employment' without first consulting the exclusive bargaining representative selected by his employees, and granting it an opportunity to negotiate on any proposed changes." This language is, we think, applicable to the present situation in that the respondent announced a new vacation plan, a clear alteration of an existing condition of employment, without consulting with the Union during a period in which the Union held a certificate as the exclusive bargaining agent of the employees of the respondent. This justified the Board in finding a violation of the Act. See N. L. R. B. v. Crompton-Highland Mills, 337 U.S. 217, 224, 69 S.Ct. 960, 93 L.Ed. 1320, May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 383–385, 66 S.Ct. 203, 90 L.Ed. 145.

 It appears that the only substantial point raised by respondent is that going to its position that it bargained in good faith from February to April of 1959, thereby curing any complaint of its failure to bargain in January of 1958 or thereafter, and that if it failed to bargain thereafter a new complaint should have been filed. We think, however, that the Board, on the basis of the original complaint, still retained jurisdiction to deal further with the matter as the proceedings between the parties continued and as new situations arose out of the original posture of the matter. In February of 1959 the trial examiner postponed the hearing so as to allow the parties time to bargain, and we feel that, under the modern view of practice, he thus retained the power to reopen the matter for further proceedings on the original complaint.

 Having jurisdiction to hear the reopened complaint, the Board was justified in finding further violations of the Act in that the respondent unlawfully refused to meet and bargain with the Union. The respondent attempts to justify its refusals during this period of time on the ground that an impasse had been reached, but we think that the correspondence set out above clearly demonstrates that respondent attempted to ignore its obligation, as established by Section 8(d) of the Act, "to meet at reasonable times and confer in good

faith." It does not appear that here the respondent had a "sincere purpose to find a basis of agreement". Globe Cotton Mills v. N. L. R. B., 103 F.2d 91, at page 94. We think that this correspondence shows that the respondent had no willingness to bargain with the Union, except upon an unconditional surrender by the Union as to all of the matters being discussed and still in dispute. While the Union apparently attempted to get all that it could from the respondent, still its position was not one of unreasonableness, and, had the respondent been willing to bargain further, much more might have been accomplished through the give and take atmosphere of the bargaining table. See N. L. R. B. v. United States Cold Storage Corp., 5 Cir., 203 F.2d 924, at page 928, certiorari denied 346 U.S. 818, 74 S.Ct. 30, 98 L.Ed. 344.

Accordingly, the order of the Board will be enforced in all respects.

It is so ordered.