**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HOLLY–GENERAL COMPANY, DIVISION OF SIEGLER CORPORATION, Respondent.**

No. 17304.

United States Court of Appeals Ninth Circuit.

June 29, 1962.

Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, A. Brummel, Attys., National Labor Relations Board, Washington, D. C., and Ralph E. Kennedy, Director, National Labor Relations Board, Los Angeles, Cal., for petitioner.

Sweeney, Irwin & Foye, and Peter W. Irwin, Los Angeles, Cal., for respondent.

Before JERTBERG and KOELSCH, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

This is a petition to enforce an order of the National Labor Relations Board, pursuant to section 10(e) of the National Labor Relations Act, as amended, [29 U. S.C.A. § 160(e)].

The principal question presented by this case, is whether an employer, during the one-year certification period, may refuse to bargain collectively because a majority of his employees have abandoned the union.

Respondent, hereinafter called "Company," is a Delaware corporation engaged in business in California.

On February 26, 1959, the United Automobile, Aircraft and Agricultural Implement Workers of America, Western Region #6 (UAW), hereinafter called "Union," was certified by the Board. In March of 1959, collective bargaining began and continued for approximately twenty meetings.

On January 6, 1960, there occurred a joint negotiation meeting between representatives of the Company and the Union. There was discussed a proposed contract which the *Company had submitted to the Union* in mid-December, 1959. The terms were acceptable to the Union. There were five items not included in the proposed contract. The Union had requested a union security clause, a dues check-off clause and a wage increase. The *Company refused these requests and the Union conceded*. In lieu of a wage increase, the Company proposed a six month wage reopening clause and the Union accepted. The Union agreed to the Company's proposal for a one year contract.

Thus, *the Union acceded to the Company's proposals and an agreement was reached* to be submitted for approval.[1]

The Company was informed, on January 18, 1960, that approximately 110 of their employees had signed a petition requesting a decertification election.

The Union called a meeting of *all* employees on January 21, 1960, in order that a vote might be taken on the agreement arrived at on January 6, 1960. The proposed contract was rejected.

On February 6, 1960, a meeting of *Union members* was called to vote on the proposed contract of January 6, 1960. The membership of the Union voted to accept the contract. The Company was notified on February 8, 1960, by the Federal Mediator that the Union had voted to accept the contract.[2]

On the same day, February 8th, an employee went to the Company office, and asked for and received the so-called decertification certificate, in order that he might file it with the Labor Board. He was informed by the Board that the petition could not be filed since it was undated and since the Union certification year did not expire until February 27, 1960.

On February 8, 1960, the employee returned to the plant and informed Chaney Vice President of the Comapny, and Amman, Personnel Director, that the Board would not accept the petition.

Later the same day, the employee drafted a new decertification certificate, and had it typed by the secretary to Amman, Personnel Director for the Company. It was circulated by a second employee and filed with the Board. The record is silent as to what action if any, the Board took concerning it.

On February 12, 1960, the Company wrote a letter to the Union.[3] In this let-

---

**1.** There was not complete agreement as to a wage reopener clause; however, the parties agreed that this would not be a problem and could be worked out.

**2.** It is to be noted that a contractual agreement arrived at as the result of collective bargaining may be approved by the Union membership and it is not required that all employees approve such a contract. See: N. L. R. B. v. Darlington Veneer Co., [4 Cir. 1956] 236 F.2d 85, 88; N. L. R. B. v. Corsicana Mills, [5 Cir. 1949] 173 F.2d 344, 346–347.

**3.** "Confirming our representative's statements during the meeting of February 12, 1960, at which meeting we were requested to reduce the contract to its final form and execute it, and so that there will be no misunderstanding, we wish to restate the Company's position. As we told you, within the last several days, we have received a petition signed by more than sixty percent of our employees in the bargaining unit requesting that an election be held to determine the question of employee representation. We are further informed that one or more employees

ter, the Company informed the Union that it was aware that a decertification move was underway and that the Regional Office of the Board had been contacted. It was also stated that since the certification year would expire in two weeks, and because of the decertification petition, that if the Company (Respondent) signed the agreement it would deprive the employees of an election to determine continued representation by the Union.

The Union, on February 16, 1960, filed the charge which gave rise to these proceedings.

The trial examiner found that the Company refused to execute the agreement of January 6, 1960, and thus violated sections 8(a), (5) and (1) of the Act,[4] [29 U.S.C.A. § 158(a) (5) and (1)], by refusing to bargain in good faith with the Union.

The findings and conclusions of the trial examiner were adopted by the Board and the Company was ordered to: (1) cease and desist from refusing to bargain collectively with the Union and interfering with the employees' right of self-organization, (2) on request of the Union, execute the agreement of January 6, 1960, and (3) post appropriate notices on its premises.

Section 9(c)(3) of the Act,[5] prohibits a second election in a bargaining unit within twelve months after a valid election has been held. The year period runs from the date of certification, rather than the date of the election.

It has been the Board's policy therefore, to hold that a company must bargain in good faith for one year from the date of certification, in the absence of "unusual circumstances."

The Company contends that it is not required to bargain when, approximately eleven months after certification, a majority of its employees are in favor of decertification proceedings.

The Company relies on the decision in National Labor Relations Board v. Globe Automatic Sprinkler Co., [3 Cir. 1952] 199 F.2d 64. In the Globe case, the Com-

went to the Board to initiate such an election, and that they were told that they were premature.

"In view of the fact that the certification year expires in less than two weeks, and in view of the expressed desires of our employees against your continued representation, which expression was contained in the petition above referred to and the signatures which we have verified, it appears to us that to reduce our agreement to final form and execute it would operate to deprive our employees of their rights to an election to determine the question of continued representation.

"We therefore have offered and renew our offer, to execute the final agreement, such agreement to take effect upon the happening of any of the following events:

"1. A reasonable time has elapsed from the earliest date at which a petition for election could be filed and no such petition is filed, or

"2. A petition for election is filed within such time and the petition is dismissed by the Board, or

"3. A petition is filed and an election held with results favorable to your organization.

"This proposal was made and is renewed in the sincere belief that in view of all of the circumstances that it ac-

cords the greatest protection to yourselves, to our employees, and to the Company."

4. "Sec. 8(a). It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7; * * *

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of 9(a).

\* \* \* \* \*

"Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement * * * as authorized in section 8(a) (3)."

5. "(3) No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held. * * *"

pany suspended bargaining, after approximately eleven months of the certification year. The basis for this suspension was that a majority of the company employees had repudiated the Union.

The Board held that the action of the Company in the Globe case, was an unfair labor practice. However, the Third Circuit refused an enforcement order on the ground that such an order would be inequitable and violative of the spirit of the National Labor Relations Act.

The Board relies on the decision in Brooks v. National Labor Relations Board, [1954] 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125. In the Brooks case, the Board petitioned the Ninth Circuit for enforcement of its order directing an employer to bargain collectively.

One week following a Board election, in which the Union was certified, a majority of the Company employees repudiated the Union. Subsequently, the Union asked the Company for a conference to negotiate a collective bargaining agreement. The Company answered in a letter and stated that it understood that a majority of its employees had repudiated the Union and concluded by stating that:

"Under the circumstances wouldn't it be wiser to defer consideration of the proposed negotiations until such time as it might appear that the employees desire to have your union represent them." N.L.R.B. v. Brooks, [9 Cir.1953] 204 F.2d 899, 902.

There was no further evidence of any communication between the Company and the Union.

The Ninth Circuit held that: (1) the letter written by the Company was a refusal to bargain collectively and therefore an unfair labor practice, and (2) following an election by the Board, the Company must bargain, even though a

majority of the employees have repudiated the Union within one week following the election.

The Ninth Circuit also implied that the Company must bargain collectively with the Union for one year from the date of certification, in the absence of "unusual circumstances," [6] even though the Company, during that period, is cognizant of the fact that the majority of its employees have repudiated the Union.

The Supreme Court granted certiorari and later affirmed the decision of the Ninth Circuit in Brooks v. National Labor Relations Board, [1954], 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125. The Court stated:

"The issue before us is the duty of an employer toward a duly certified bargaining agent if, shortly after the election which resulted in the certification, the union has lost, without the employer's fault, a majority of the employees from its membership." at p. 98, 75 S.Ct. at p. 178.

The Supreme Court, speaking through Justice Frankfurter, unanimously affirmed the Ninth Circuit decision.

Certiorari had been granted because of conflict in the Circuits. "Some Circuits sanctioned the Board's position. The Court of Appeals for the Sixth Circuit denied enforcement. The Court of Appeals for the Third Circuit, held that a 'reasonable' period depended on the facts of the particular case," (p. 102, 75 S.Ct. p. 180) citing the Globe case, (supra).

The Court chose not to follow or adopt the Globe rule. After discussing the period during which the second election is permissible, the Court said:

"To be sure, what we have said has special pertinence only to the period during which a second election is impossible. *But the Board's view*

6. "Unusual circumstances" were found by the Board, and impliedly approved by the Ninth Circuit, to include: (a) when the union representing the employees was dissolved, (b) when the bargaining representative switched its affiliation from one international union to another so that the identity of the bargaining agent was doubtful, and (c) where the number of employees in the bargaining unit doubled or quadrupled in the space of a year.

*that the one-year period should run from the date of certification rather than the date of election seems within the allowable area of the Board's discretion in carrying out congressional policy.* See Phelps Dodge Corp. v. [National] Labor [Relations] Board, 313 U.S. 177, 192–197, 61 S.Ct. 845, 85 L.Ed. 1271; [National] Labor [Relations] Board v. Seven-Up Bottling Co., 344 U.S. 344 [73 S.Ct. 287, 97 L.Ed. 377]. Otherwise, encouragement would be given to management or a rival union to delay certification by spurious objections to the conduct of an election and thereby diminish the duration of the duty to bargain. * * *" (p. 104, 75 S.Ct. p. 181). [Emphasis added]

The Brooks case upholds the Board's position that the parties, following a certification election, bargain collectively for a "reasonable period" usually one year in the absence of "unusual circumstances,"[7] and that an employer must continue to bargain in good faith even though he is cognizant of the fact that a majority of his employees, after the election, have repudiated the Union.

Following the Brooks decision, (supra), various Circuit Courts passed on the effect of the Brooks decision. In Carpinteria Lemon Assn. v. N.L.R.B., [9 Cir.1956] 240 F.2d 554, cert. den. 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 the Ninth Circuit, referring to the Brooks case, said:

"The Court there decided that the one-year rule was within the power of the Board to make and its application was a matter within the Board's discretion." (240 F.2d p. 557).

In National Labor Relations Board v. Henry Heide, Inc., [2 Cir.1955] 219 F.2d 46; cert. den. 349 U.S. 952, 75 S.Ct. 881, 99 L.Ed. 1277, the Court said:

"Respondent points to a doctrine originating with the Board that although an employer must bargain with a certified unit for a reasonable period, normally one year, he is relieved from that obligation if 'unusual circumstances' are present. All of the Board's 'unusual circumstances' cases antedated the Taft-Hartley Act. The language of that Act, the failure of the Board to find 'unusual circumstances' in any case since enactment of the Act, and the recent authoritative interpretation by the Supreme Court of the Board's policy," (citing Brooks) "all suggest that an employer, acting on his own volition, may not, within the certification period, cease to bargain with a certified union because of 'unusual circumstances'. * * *" (219 F.2d pp. 47–48).

In National Labor Relations Board v. J. W. Rex Company, [3 Cir.1957] 243 F.2d 356, the problem was the impact of changed conditions upon the duty to bargain. The Company contended that a merger within two months after certification of the union relieved it of its duty to bargain. The Court said at p. 360:

"But an employer cannot rely on the changes to justify his refusal to bargain when those changes occur within the certification year, and especially where, as here, the first refusal to bargain occurred before the modification of the unit structure. * * *"

The Court concluded, (p. 361):

"The Board's determination that the reasonable period is one year was later given judicial sanction in Brooks v. N.L.R.B., [1954] 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125."

No mention was made of its decision in the Globe case, (supra).

The Company urges that the Brooks case, "pointedly avoids affirming any one year rule as a rigid arithmetical test of good faith bargaining."

It is obvious that the Board is seeking a determination which would result in a

---

7. The Supreme Court approved the conclusion of the Ninth Circuit and the Board as to what amounts to "unusual circumstances." See note 6 supra.

definite one year rule, as far as fact situations similar to ours are concerned.

The position of the Board, appears to be supported by valid policy considerations.

A definite requirement of good faith bargaining during the year subsequent to certification following an election would result in, (1) stability in labor-management relations, (2) ease in enforcement by the Board, and (3) a clear delineation as to the time during which management is required to bargain in good faith.

A contrary result would require a decision on a case by case method, as to just what is, and what is not, a "reasonable time." This was the approach of the Globe case, (supra) and was rejected by the Supreme Court in Brooks (supra).

■ The ultimate object of the National Labor Relations Act is industrial peace. The approval of the one year rule laid down by the Board would operate to accomplish that purpose. Such a one year certification rule is to assure from the Union's standpoint, that it may negotiate a contract free from "exigent pressure to produce hot house results or be turned out" and from the employer's standpoint, to assure that if he "works conscientiously toward agreement, the rank and file may [not], at the last moment, repudiate their agent," Brooks (supra), 348 U.S. at 100, 75 S.Ct. at 179.

Here the Company's own proposal was accepted by the Union but the Company based its refusal to sign the contract solely on the fact that it believed a majority of its employees were in favor of decertification. Its refusal within the certification year to execute the contract, frustrated bargaining stability.

"The underlying purpose of this statute is industrial peace. To allow employers to rely on employees' rights in refusing to bargain with the formally designated union is not conducive to that end, it is inimical to it." Brooks, (supra) 348 U.S. at 103, 75 S.Ct. at 181.

■ ■ We hold that in the absence of "unusual circumstances," the Company must bargain in good faith for one year after certification, following an election, even though a majority of the employees of said Company have repudiated the Union. None of the approved "unusual circumstances" are present here.

The letter written by the Company, herein, amounted to a refusal to bargain in good faith and thus was an unfair labor practice within Section 8(a) (5) and (1) of the Act,[8] [29 U.S.C.A. Sec. 158(a) (5) and (1)].

The petition for enforcement of the Board's Order is granted.

---

8. Compare the Company letter in this case to the Company letter in the Brooks case (supra).