**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOUISIANA BUNKERS, INC., and Surprise, Inc., Successor to Patterson Menhaden Corp., Respondents.**

No. 25958.

United States Court of Appeals
Fifth Circuit.

April 8, 1969.
Rehearing Denied July 9, 1969.

1296

Marcel Mallet-Prevost, Asst. Gen. Counsel, Gary Green, Atty., N. L. R. B., Washington, D. C., John F. LeBus, Director, Region 15, N. L. R. B., New Orleans, La., for petitioner.

Frederick A. Kullman, Kullman & Lang, C. Dale Stout, Richard C. Keenan, New Orleans, La., for respondents.

Before WISDOM and GODBOLD, Circuit Judges, and HUGHES, District Judge.

WISDOM, Circuit Judge:

This case presents a novel twist in the "runaway-shop" doctrine.

The Board seeks enforcement of its order finding that the respondents violated §§ 8(a) (5) and 8(a) (1) of the National Labor Relations Act,[1] by refusing to recognize and bargain with the Union[2] as the certified representative of the employees. 163 NLRB No. 83. We enforce the order.

### I.

In the spring of 1963, the Union attempted to organize the fishermen employed on various menhaden[3] fishing boats operating out of Cameron, Louisiana. The ownership and management of this industry is distributed among eight different corporations: Louisiana Menhaden Company, Inc. owns and operates a processing plant; seven other companies own and operate a total of eight vessels which catch and deliver menhaden to the plant. The boat companies enter into contracts each year with Louisiana Menhaden Company, Inc., for all fish caught during the season, which lasts from May

---

1. 29 U.S.C. § 158: "(a) It shall be an unfair labor practice for an employer— (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; * * * (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title."

2. Fish, Seafood, Agricultural and Allied Workers Union No. 300, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL-CIO.

3. A menhaden is a fish of the herring family that is used for making oil and fertilizer.

through October. After the season, the boats may be sent to other locations on the Atlantic or Gulf Coast at the discretion of their respective owners. During the menhaden season, however, all the boats owned by these seven companies perform the same fishing operation, in the same waters, and with the crew members whose duties are exactly alike from boat to boat. Generally, each boat returns daily with its catch. Each vessel has a captain hired and paid by the boat owner. The captain has control over hiring, firing, and paying his crew and decides when, where, and how to fish. Each vessel also has one mate, one engineer, one pilot, one cook, and 13 to 15 fishermen.

The Union contended that a single unit for the fleet was appropriate, consisting of all eligible employees on the eight vessels that delivered fish to the processing plant owned by Louisiana Menhaden Company. In support of its contention, the Union pointed out that Louisiana Menhaden Company, Inc. and the seven boat-owning companies all had substantially interlocking ownership and management. The boat owners took the position that such a single unit would be inappropriate. After a hearing, the Board's Regional Director concluded that since each boat was autonomous under its captain, who was responsible for hiring, firing, and paying his crew, the crew of each boat should be a separate unit for purposes of collective bargaining. On October 18, 1963, eight separate elections were conducted at Cameron among the employees of each of the eight boats. In five of these boats, a majority of the employees voted for Union representation. On February 9, 1965, the Board certified the Union as the exclusive bargaining representative for each of the five boats, two of which were the *Jack T. Styron* and the *Gallant Man*.

When the fishing season ended in October 1963, Patterson Menhaden Corp., owner of the *Gallant Man*, permanently transferred that vessel from Cameron to Empire, Louisiana, about two hundred miles away. In 1964, Surprise, Inc. was incorporated. This corporation had the same officers, directors, and shareholders as Patterson Menhaden Corp. Surprise, Inc. owned and operated a fishing vessel, the *Surprise*, out of Cameron that was captained by the former captain of the *Gallant Man*, Fletcher Miller.

The Union filed unfair labor practices against Patterson Menhaden Inc. and Surprise, Inc. for their treatment of the crew of the *Gallant Man*. After a hearing, the Board found that the companies had violated §§ 8(a) (3) and 8(a) (1) [4]

4. 29 U.S.C. § 158(a) (3): (a) It shall be an unfair labor practice for an employer—(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership; * * * "

of the National Labor Relations Act for their failure to rehire for the *Surprise* the crew of the *Gallant Man,* in reprisal against their pro-Union vote. The Board found that Patterson Menhaden Inc. and Surprise, Inc. were a single employer within the meaning of the Act and ordered reimbursement for loss of earnings and reinstatement. This Court granted enforcement of the Board's order. NLRB v. Patterson Menhaden Corp., 5 Cir. 1968, 389 F.2d 701.

The crew of the *Jack T. Styron,* owned by Louisiana Bunkers, Inc., had also voted for Union representation, and the Board had issued a certification for this boat in February 1965. After the 1964 fishing season, Louisiana Bunkers, Inc. decommissioned and sold the *Jack T. Styron.* Louisiana Bunkers, Inc. then commissioned a new vessel, the *Sea Leader,* which fished out of Cameron. The captain, pilot, and engineer of the *Jack T. Styron* were the same men who held these positions on the *Sea Leader* in 1965. Of the fifteen crew members of the *Jack T. Styron* eligible to vote in the 1963 election, eight were aboard the *Sea Leader* in 1965.

On March 12, 1965, after the certification had issued, the parties had their first bargaining session. The Union requested that Louisiana Bunkers, Inc. bargain for the crew of the *Sea Leader* on the ground that this boat was the successor to the recently decommissioned *Jack T. Styron.* Louisiana Bunkers, Inc. refused, asserting that the certification involving the crew of the *Jack T. Styron* did not extend to any other vessel. The Union also requested that Surprise, Inc. bargain for the crew of the *Surprise.* Surprise, Inc. refused on the ground that the certification of the *Gallant Man's* crew did not transfer to the *Surprise.*

In September 1965 the Union filed unfair labor charges against Louisiana Bunkers, Inc. and Surprise, Inc. for their refusal to bargain. The Board found that Louisiana Bunkers, Inc. and Surprise, Inc. had violated §§ 8(a) (5) and 8(a) (1) of the Act and ordered them to cease and desist from these unfair labor practices and, upon request, to bargain with the Union as the representative of the crews of *Sea Leader* and the *Surprise.* In the Board's view, the certifications issued in 1965 after elections among the crews of the *Gallant Man* and the *Jack T. Styron,* applied, respectively, to the crews working in 1965 aboard the *Surprise* and the *Sea Leader.*

## II.

In the typical runaway-shop case, the employer simply moves his plant to a new location; rarely, if ever, does he move his plant back to the original location or build another plant on the original location. The remedies in these cases usually have followed the plant: employers have been required to rehire the former employees at the new location,[5] to pay reasonable relocation expenses,[6] and to bargain with the new employees at the new location.[7]

Here, the employer has established a new "plant" at the old location that performs the same functions as the old "plant". The owners of the *Gallant Man,* Patterson Menhaden Corp., and the *Jack T. Styron,* Louisiana Bunkers, Inc., are still fishing in the same waters with similar boats, the *Surprise* and the *Sea Leader.* Although Surprise, Inc. owns the *Surprise,* Patterson Menhaden Corp. and Surprise, Inc. already have been held by this Court to be a single employer for labor relations purposes. NLRB v. Patterson Menhaden Corp., 5 Cir. 1968, 389 F.2d 701, 703–704. The crews of the

---

5. *See* Rome Products Co., 1948, 77 N.L.R.B. 1217; *cf.* NLRB v. Winchester Elec., Inc., 2 Cir. 1961, 295 F.2d 288, 5 A.L.R.3d 726.

6. Schieber Millinery Co., 1940, 26 N.L.R.B. 937; Klotz & Co., 1939, 13 N.L.R.B. 746.

7. *See* New Madrid Mfg. Co., 1953, 104 N.L.R.B. 117; M. M. Joffee Co., 1947, 74 N.L.R.B. 1568. *But see* Mount Hope Finishing Co., 1953, 106 N.L.R.B. 480.

*Surprise* and the *Sea Leader* are approximately the same size as the crews of the *Gallant Man* and the *Jack T. Styron*, and they engage in the same type of fishing activities. Moreover, some of the crew members on the new boats in 1965 were crew members of the *Gallant Man* and the *Jack T. Styron:* four of sixteen on the *Surprise* and eight of fifteen on the *Sea Leader*. Also, the captains and officers of the new boats in 1965 occupied these same positions on the old boats.

In these circumstances, we find that this case does not differ substantially from a case involving physical plant replacement and high labor turnover. Mere replacement of physical plant has never been sufficient to abrogate the employer's responsibility to bargain with his employees' union. Also, high labor turnover within the certification year, even if the union loses its majority, has been held to be insufficient to support the employer's refusal to bargain. *See* Brooks v. NLRB, 1954, 348 U.S. 96, 75 S.Ct. 176, 99 L.Ed. 125; NLRB v. U. S. Sonics Corp., 1 Cir. 1963, 312 F.2d 610, 616; NLRB v. Sharon Hats, Inc., 5 Cir. 1961, 289 F.2d 628, 631; NLRB v. White Constr. & Eng'r Co., 5 Cir. 1953, 204 F.2d 950, 953. Moreover, even in runaway-shop cases, the Board has ordered and courts have enforced bargaining with new employees at the new location without proof of union majority. Die Supply Corp., 1966, 160 N.L.R.B. 1326; Hurley Co., 1962, 136

N.L.R.B. 551, enforced, 8 Cir., 310 F.2d 158; Royal Oak Tool & Mach. Co., 1961, 132 N.L.R.B. 1361, enforced, 6 Cir. 1963, 320 F.2d 77; New Madrid Mfg. Co., 1953, 104 N.L.R.B. 117.

Although the wood, steel, and names of the boats have changed and some of the employees have changed, the appropriate bargaining unit has not changed: The unit is still the employees aboard menhaden fishing boats owned by Patterson Menhaden Corp. (now Surprise, Inc.) and Louisiana Bunkers, Inc. that operate out of Cameron, Louisiana, and serve the Louisiana Menhaden Co. Each company had only one boat that was originally certified; each still has only one boat fishing out of Cameron that meets the unit description. By our holding that Surprise, Inc. and Louisiana Bunkers, Inc. must bargain with the Union, we are not forcing a union on the crews of the *Surprise* and the *Sea Leader* in violation of § 7 [8] of the National Labor Relations Act. Each crew is still free to elect or reject union representation.

III.

We find no merit in respondent's contention that this action is barred by the statute of limitations in § 10(b) [9] of the Act. Section 10(b) provides that a complaint must be filed within six months of the occurrence of an unfair labor practice. Respondents argue that the refusal to bargain occurred on March

---

8. 29 U.S.C. § 157: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158 (a) (3) of this title."

9. 29 U.S.C. § 160(b): "Whenever it is charged that any person has engaged in

or is engaging in any such unfair labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

12, 1965, and the charge was not filed until over six months later on September 28, 1965. The record indicates that although the respondents initially refused to bargain on March 12, the Union requested, and was refused, recognition on April 1, April 12, and September 24. These repeated refusals, in violation of respondents' continuing duty to bargain, clearly make the filing of the charge timely. *See* NLRB v. Strong, 9 Cir. 1967, 386 F.2d 929, 930–931, cert. denied, 1968, 390 U.S. 920, 88 S.Ct. 853, 19 L.Ed.2d 980; NLRB v. Albritton Eng'r Corp., 5 Cir. 1965, 340 F.2d 281, 285; NLRB v. White Constr. & Eng'r Co., 5 Cir. 1963, 204 F.2d 950, 952–953.

\* \* \*

We uphold the Board's finding that respondents violated §§ 8(a) (5) and 8(a) (1) of the National Labor Relations Act by refusing to bargain with the Union as representative of the employees of the *Sea Leader* and the *Surprise,* and enforce the Board's order.

Enforced.