**INTER–POLYMER INDUSTRIES, INC., Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 72–1835.

United States Court of Appeals, Ninth Circuit.

June 15, 1973.

Richard L. Lotts (argued), of Sheppard, Mullin, Richter & Hampton, Los Angeles, Cal., for petitioner.

William Wachter (argued), Peter G. Nash, Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Douglas S. McDowell, NLRB, Washington, D. C.; Wilford Johanson, Director, Region 21, Douglas Olins, Region 21, NLRB, Los Angeles, Cal., for respondent.

Before BROWNING and GOODWIN, Circuit Judges, and JAMESON,* District Judge.

ALFRED T. GOODWIN, Circuit Judge:

An employer petitions to set aside an order of the National Labor Relations Board to reinstate a discharged employee.

The Southern California Printing Specialties and Paper Products Union District Council No. 2, International Printing Pressmen and Assistants' Union of North America, A.F.L.–C.I.O., filed charges that Inter-Polymer Industries, Inc., a Los Angeles manufacturer of plastic bags, violated § 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (3), and (5) (1970), by discharging Duane Osmus, an employee, for his union activities and by refusing to bargain in good faith with the Union.

After extensive hearings the Board found Inter-Polymer guilty of unfair labor practices in refusing to reinstate Osmus, in refusing to bargain in good faith, and in threatening employees for engaging in union activities. The Board ordered Inter-Polymer to cease and desist from designated unfair labor practices, to reinstate Osmus with back pay, and to post compliance notices. The Board's decision and order are reported as 196 NLRB No. 101 (1970).

Inter-Polymer's principal contention is that its refusal to reinstate Osmus was justified. The sharply contested issue is whether the NLRB was correct in deciding that Osmus was punished for union activity.

In March 1970, Inter-Polymer hired Osmus to perform machinist's work and maintenance tasks. By August 1970, the volume of machinist's work had declined, and Osmus was assigned to a maintenance project requiring overtime work. Osmus asked to be reassigned to machinist work. When his request was denied, he quit. A few days after quitting Osmus indicated his desire to return to work. Inter-Polymer agreed to reinstate him if he would perform ordinary maintenance tasks as well as machinist's work.

In October, 1970, the Union became the collective bargaining representative for the plant. Osmus, a member of the employee negotiating committee, wrote a proposal on the assignment of maintenance and machinist work. Osmus's supervisor told him that, because of his membership on the Union negotiating committee, Osmus was "on the company's shit list."

In November 1970, Osmus was laid off. Insufficient work in the maintenance department was given as the reason. In December Inter-Polymer recalled Osmus, but told him that he could not expect the bulk of his work to be machinist's work. When Osmus reported to work, he complained about his work assignment. He telephoned the Union's administrative assistant, who suggested he accept any work assignment prescribed,

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

but that he inform Inter-Polymer that he would work only "under protest." Osmus took this advice, and his employers demanded an explanation of "under protest." When Osmus did not explain what he meant, the president of Inter-Polymer warned him not to use "union tactics," and told him he could return to work only if he did not require preconditions. Osmus left the plant, and his union filed the charges.

The Trial Examiner and the Board determined that Osmus was laid off in November for bona fide economic reasons. They also found that Osmus, in saying that he would work "under protest," was stating that he was willing to accept general maintenance assignments, but that he would do so unwillingly and with full intent to use the Union to win an assignment to the machine shop, working exclusively as a machinist. However, where the Trial Examiner found that Inter-Polymer had a right to refuse to re-hire Osmus on Osmus's conditional terms, the Board concluded otherwise. The Board held that Inter-Polymer violated Section 8(a)(1) of the Act in refusing to reinstate Osmus.

█ While the evidence tends to cut both ways, substantial evidence supports the Board's finding that Inter-Polymer denied Osmus re-employment because he had sought the assistance of his bargaining representative in a dispute with management over work assignments. The Board's order thus vindicates the employee's right to utilize his union in a controversy concerning his work. *See, e. g.*, NLRB v. Victor Otlans Roofing Co., 445 F.2d 299, 300 (9th Cir. 1971).

█ Inter-Polymer also contends that the complaint should have been dismissed because an agent of the NLRB interviewed Inter-Polymer's labor consultant and negotiator, without obtaining the permission of counsel.

As in Singer Co. v. NLRB, 429 F.2d 172, 178 (8th Cir. 1970), we need not reach the question whether company counsel must be afforded an opportunity to be present during all investigative interviews of company personnel. Here the Board found that its agent sought and obtained company permission to interview the labor consultant, and that the agent did not exceed the terms of that permission. The Board determined that in the course of being questioned on permissible subjects, the interviewee volunteered the evidence which Inter-Polymer later sought to suppress. We cannot say that the Board's findings in this regard were without a substantial basis in the record.

█ Inter-Polymer's last contention is that the compliance notice which the Board's order requires it to post should be modified to inform the employees of their statutory right to file a decertification petition. Citing NLRB v. Copps Corp., 458 F.2d 1227 (7th Cir. 1972), and NLRB v. Priced-Less Discount Foods, Inc., 407 F.2d 1325 (6th Cir. 1969), Inter-Polymer maintains that decertification notice is necessary, because, inter alia, the employees have signed an anti-union petition. In making this contention, the company overlooks the fact that the union here, unlike those in *Copps* and *Priced-Less,* had won a Board election and was certified as the employees' bargaining representative. Absent "unusual circumstances," an employer must bargain with the certified representative of the employees during the "certification year" even if the union has lost its majority status through no fault of the employer. *E. g.,* Brooks v. NLRB, 348 U.S. 96, 103–104, 75 S.Ct. 176, 99 L.Ed. 125 (1954); NLRB v. Keystone Valve Corp., 449 F.2d 1253, 1256–1259 (5th Cir. 1971); NLRB v. Holly-General Co., 305 F.2d 670, 675 (9th Cir. 1962).

The petition to set aside the order of the NLRB is denied.